# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEANNA BREDBENNER, PAUL GILBERT, and BELINDA SERRANO, both individually and behalf of all other similarly situated persons, | 09-cv-905 (WJM) (MF) |
| Plaintiffs, | |
| v. | |
| LIBERTY TRAVEL, INC., | |
| Defendant. | |
| CAROL CONNELL, WILLIAM KRUMPHOLZ, CORRINE ORCHIN, NICOLE REID and LEIGH ANNE HUBBS, both individually and behalf of all other similarly situated persons, | 09-cv-1248 (WJM) (MF) 09-cv-4587 (WJM) (MF) |
| Plaintiffs, | |
| v. | |
| LIBERTY TRAVEL, INC., FLIGHT CENTRE USA, INC., GILBERT HAROCHE, and MICHELLE KASSNER, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL
APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL
OF THE FLSA SETTLEMENT**

Submitted by:

**BEATTIE PADOVANO, LLC**
Patrick J. Monaghan, Jr.
50 Chestnut Ridge Road
Montvale, New Jersey 07645
Telephone: (201) 573-1810

**GETMAN & SWEENEY, PLLC**
Michael J.D. Sweeney
Dan Getman
Matthew Dunn
9 Paradies Lane
New Paltz, New York 12561
Telephone:  (845) 255-9370

**MOTION DAY: MARCH 14, 2011**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

I.      INTRODUCTION ..................................................................... 1

II.     HISTORY................................................................................... 2

    A.    Procedural History ........................................................... 2

        1.    The Bredbenner Case............................................ 2

        2.    The *Connell* Case................................................... 4

        3.    The *Hubbs* Case ................................................... 5

        4.    The *Connell* State Case....................................... 5

    B.    Overview of Investigation and Discovery ................................. 6

    C.    Settlement Negotiations ................................................... 6

    D.    Preliminary Approval ..................................................... 7

    E.    Results of Notice............................................................ 7

III.    ARGUMENT .......................................................................... 8

    A.    The Settlement Class Meets the Legal Standard for Class Certification............................................................... 8

    B.    The Settlement Class Meets the Rule 23(a) and (b)(3) Class Requirements ......................................................... 9

    C.    The Settlement Class Meets Rule 23(a) Requirements........................... 10

        1.    There Are More Than 40 Class Members ........................................ 10

        2.    Common Questions of Fact or Law Are Present ................................. 11

        3.    Plaintiffs' Claims Are Typical of the Class Claims ............................ 12

4.      Adequacy of Representation .......................................................... 12

D.      Plaintiffs Satisfy The Two Rule (b)(3) Requirements ............................ 14

1.      Common Questions Predominate ..................................................... 14

2.      A Class Action is a Superior Mechanism ............................................ 15

E.      The Settlement Is Fair ............................................................... 17

F.      A Presumption of Fairness Exists ................................................... 18

G.      The Settlement if Fair, Reasonable and Adequate Under the Nine
*Girsh* Factors ...................................................................... 20

1.      Litigation Through Trial Would be Complex, Costly, and Long
(*Girsh* Factor 1) .................................................................. 21

2.      The Reaction of the Class Has Been Positive  (*Girsh* Factor 2).......... 23

3.      Discovery Has Advanced Far Enough to Allow the Parties to
Resolve the Case Responsibly (*Girsh* Factor 3) ................................. 23

4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Girsh*
Factors 4 and 5) .................................................................. 25

5.      Establishing a Class and Maintaining it Through Trial Would Be
Difficult (*Girsh* Factor 6)...................................................... 27

6.      Liberty Travel' Ability to Withstand a Greater Judgment is Not
Clear (*Girsh* Factor 7)........................................................... 28

7.      The Settlement Fund is Substantial, Even in Light of the Best
Possible Recovery and the Attendant Risks of Litigation (*Girsh*
Factors 8 & 9) .................................................................... 29

H.      Policy in favor of class settlements ................................................ 30

IV.     FLSA SETTLEMENT ................................................................ 31

V.      CONCLUSION ...................................................................... 34

ii

# TABLE OF AUTHORITIES

**Cases**

*Adeva v. Intertek USA Inc.*, et al., 09-CV-01096-SRC-MAS (D.N.J. Dec. 22, 2010) ................................................................................32, 33

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)....................................... 10

*Ayers v. SGS*, No. 03 Civ. 9078 (S.D.N.Y. Sept. 9, 2009)..................................... 19

*Baby Neal for and by Kanter v. Casey,* 43 F.3d 48 (3d Cir.1994) ........................ 11

*Banda v. Corzine*, No. 07-4508 (WJM), 2007 WL 3243917 (D.N.J. Nov. 1, 2007)................................................................................................ 11

*Barnes v. Am. Tobacco Co.,* 161 F.3d 127 (3d Cir.1998) ..................................... 12

*Clark v. Ecolab, Inc.*, 06 Civ 5672, 2009 WL 6615729 (S.D.N.Y. Nov. 17, 2009)...................................................................................... 19

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)...........................21, 31

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)...................28, 29

*Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996) ........................ 13

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975) ............................................18, 20, 21

*Gulino v. Symbol Techs.Inc.*, No. 06 Civ. 2810 (E.D.N.Y. Oct. 22, 2008) ................................................................................................... 19

*Hairston v. McLean Trucking Co.*, 520 F.2d 226 (4th Cir. 1975) ......................... 21

*Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010)..............................................................18, 19, 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................... 16

*Herring v. Hewitt Associates, Inc.*, No. 06 Civ. 267, 2007 WL 2121693 (D.N.J. July 24, 2007) ......................................................... 32

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) ................................................................................ 15

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom* ...............................................21, 24

*In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327 (D.N.J. 2002) ................................................................... 20

*In re Directech Southwest, Inc., Fair Labor Standards Act (FLSA) Litig*, No. 2:08-md 1984 (E.D. Lou.)............................................ 20

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768 (3d Cir. 1995) ...................................passim

*In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010)...................................15, 16, 21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir.1998)..............................................................12, 13

*In re Sch. Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1990) ...................................... 31

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir.2004)..............passim

*Larson v. Sprint Nextel Corp.*, No. 07-5325 (JLL), 2010 WL 234934 (D.N.J. Jan. 15, 2010) ................................................................ 14

*Lenahan v. Sears, Roebuck and Co.*, No. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006) ............................................................passim

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ........................................................................................ 32

*Martinez-Hernandez v. Butterball, Inc.*, 5:07-cv-00174-H (E.D.N.C.)................. 19

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ..................... 32

*Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995)............................ 31

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982)................................................. 29

iv

*Riddle v. SunTrust Bank,* 1:08-cv-1411-RWS (N.D.Ga Oct. 20, 2010) ............... 20

*Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259 (11th Cir. 2008) ............................................................................................ 26

*Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ...................................................passim

*Stewart v. Abraham,* 275 F.3d 220 (3d Cir. 2001)................................................ 11

*Weiss v. York. Hosp.,* 745 F.2d 786 (3d Cir.1984)................................................ 9

*Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239 (3d Cir.1975) ............................... 13

**Rules**
Fed.R.Civ.P. 23.................................................................................passim

## I. INTRODUCTION

After more than two years of litigation, and the dedicated assistance of Magistrate Judge Falk, the Parties agreed to settle four federal and state wage and hour cases. This settlement will result in current and former Liberty Travel Travel Agents recovering unpaid overtime wages under both the Fair Labor Standards Act and four state laws. On November 19, 2010, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.

As agreed by the Parties, the Named Plaintiffs, and preliminarily approved by the Court, the settlement meets the class certification standards and the settlement is reasonable. Class certification is appropriate because Plaintiffs meet the requirements under Rule 23(a) and (b)(3). Further, the settlement is fair under Rule 23(e) because there is a presumption of fairness, the settlement satisfies the nine *Girsh* factors, and public policy favors this class wide settlement.  The settlement is reasonable under the Fair Labor Standards Act.

Class Members are in favor of the settlement. Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, their right to opt out of or object to the settlement, and the attorneys' fees and costs.  Only six Class Members opted out of the settlement and no Class Member has objected.

1

The Parties' $3,000,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiffs submit this Memorandum of Law in support of their Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval"), pursuant to Federal Rule of Civil Procedure 23(e), for an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Stipulation and Settlement Agreement ("Settlement Agreement"); and (3) approving the FLSA Settlement.

## II. HISTORY

### A. Procedural History

#### 1. The Bredbenner Case

On February 27, 2009, Plaintiffs Deanna Bredbenner, Paul Gilbert, and Belinda Serrano filed a nationwide collective action Complaint pursuant to 29 U.S.C. § 216(b) in the U.S. District Court for the District of New Jersey, asserting violations of the Fair Labor Standards Act ("FLSA"). (Sweeney Decl. ¶ 1). The Complaint was filed against Liberty Travel, Inc. (Doc.[1] 1). Plaintiffs Bredbenner, Gilbert, and Serrano and similarly situated Travel Agents were improperly paid overtime under

---

[1] All "Doc." references refer to documents filed in *Bredbenner v. Liberty Travel, Inc.*, 09-cv-905 (WJM)(MF) (D.N.J.).

2

the FLSA. The Plaintiffs sought recovery of overtime wages, attorneys' fees and costs and liquidated damages.  (Sweeney Decl. ¶ 1).

Liberty Travel filed its Answer, disputing the material allegations and denying any liability for the claims.  (Sweeney Decl. ¶ 2).  In its Answer, Liberty Travel asserted that it properly paid Plaintiffs their overtime wages and asserted various good faith defenses to liquidated damages and willfulness. (Sweeney Decl. ¶ 3).

On March 24, 2009, Plaintiffs filed a Motion to Conditionally Certify a nationwide FLSA collective action.  (Sweeney Decl. ¶ 4).  On April 6, 2009, Liberty Travel opposed Plaintiffs' motion. (Sweeney Decl. ¶ 5).  On July 31, 2009, the Court issued a Letter Opinion and Order granting in part Plaintiffs' motion. *See Bredbenner Case*, Doc. 40.  One hundred and forty-three Travel Agents eventually opted into the litigation. (Sweeney Decl. ¶ 6).

On August 28, 2009, Plaintiffs filed a Renewed Motion to Conditionally Certify a FLSA Collective Action; and on September 8, 2009 Liberty Travel opposed Plaintiffs' motion. (Sweeney Decl. ¶ 7). Plaintiffs' motion was pending at the time the Parties entered into this settlement. (Sweeney Decl. ¶  8).

Prior to the settlement, the Parties agreed that the liability could likely be resolved by summary judgment. The Parties further agreed that many of the facts could be stipulated to – thus limiting discovery. Since July 2009, the Parties worked on crafting a Joint Stipulation of Facts for the Rule 56.1 statement.

(Sweeney Decl. ¶ 9). Disputed facts were resolved with limited discovery. Plaintiffs' Counsel defended three depositions: Deanna Bredbenner's deposition occurred on January 15, 2010 in Philadelphia, Pennsylvania; and both Paul Gilbert's and Belinda Serrano's depositions occurred on January 20, 2010 in New York, New York. Plaintiffs took Liberty Travel's 30(b)(6) deposition on January 27, 2010. (Sweeney Decl. ¶ 10). And Plaintiffs filed a motion to compel Liberty Travel to produce complete payroll documents for the opt-in plaintiffs and attorney advice and work-product documents. (*Id.*). Plaintiffs also noticed another 30(b)6) deposition, and a deposition of Liberty Travel's attorneys at Morgan Lewis & Bockius. (Sweeney Decl. ¶ 11).

In addition, both Parties served discovery demands. The Parties exchanged initial disclosures, interrogatory responses, and both paper and electronic documents. (Sweeney Decl. ¶ 12).

2. The *Connell* Case

On March 19, 2009, former Travel Agents for Liberty Travel, Carol Connell, William Krumpholz, Corrine Orchin, and Nicole Reid, filed a lawsuit bringing class actions on behalf of putative class members in Maryland, Massachusetts, and New York. (Sweeney Decl. ¶ 13). They brought their claims against Liberty Travel, Inc., Flight Centre USA, Inc., Gilbert Haroche, and Michelle Kassner On June 15, 2009, Plaintiffs filed an Amended Complaint and also alleged a FLSA

claim. (Sweeney Decl. ¶ 14). On August 24, 2009, Gilbert Haroche filed an Answer. (*Id.*). Because the issues raised in the *Connell* action were similar to those raised in *Bredbenner*, the Court stayed the *Connell* action stayed pending resolution of the legal issues in the *Bredbenner*. In all, nine Travel Agents filed a Consent to Sue to Join the *Connell Case*. (*Id.*).

3. The *Hubbs* Case

On September 4, 2009, Leigh Anne Hubbs filed a lawsuit in the District of New Jersey alleging a nationwide FLSA collective action and a Fed. R. Civ. P. 23 class action on behalf of putative class members in New Jersey. (Sweeney Decl. ¶ 15). She brought claims against Liberty Travel, Inc., Flight Centre USA, Inc., Gilbert Haroche, and Michelle Kassner. The Court subsequently consolidated this case with the *Connell* case and stayed pending the outcome in the *Bredbenner*. *See, Hubbs v. Liberty Travel et al.,* 09-4587FSH, Doc. 17 (D.N.J.). In all, two Travel Agents filed a Consent to Sue to Join the *Hubbs* case. (Sweeney Decl. ¶ 16).

4. The *Connell* State Case

On June 17, 2009, Carol Connell, William Krumpholz, Corrine Orchin, and Nicole Reid filed a lawsuit in New Jersey Superior Court alleging three class actions on behalf of putative class members in Maryland, Massachusetts, and New York. (Sweeney Decl. ¶ 17). Plaintiffs brought their claims against Liberty Travel, Inc., Flight Centre USA, Inc., Gilbert Haroche, and Michelle Kassner  On

5

September 17, 2009, Plaintiffs filed an Amended Complaint adding Leigh Anne

Hubbs as a Named Plaintiffs and alleging an additional class action based on New

Jersey state law.  Like the pending federal *Connell* case, the Court stayed the case

pending resolution of the legal issues in *Bredbenner*. (Sweeney Decl. ¶ 18).

### B. Overview of Investigation and Discovery

Plaintiffs' Counsel has conducted extensive investigation and prosecution of the

claims in the Litigation, including, but not limited to, taking and defending

depositions, interviewing putative class members and Opt-in Plaintiffs, obtaining

declarations from putative class members, reviewing documents produced by

Liberty Travel, reviewing and analyzing time and payroll data, drafting and filing

two motions for conditional certification under 29 U.S.C. § 216(b), responding to

two motions to dismiss, fielding questions from potential opt-in plaintiffs,

engaging in discovery motion practice, and engaging in extensive settlement

negotiations.  (Sweeney Decl. ¶ 19).

### C. Settlement Negotiations

On February 19, 2010, March 19, 2010, May 21, 2010, June 21, 2010, and July

9, 2010 the Parties attended Court-ordered settlement sessions.  Each settlement

session was held in the Courthouse. (Sweeney Decl. ¶ 20).  After nearly six months

of negotiating, and after the Court became directly involved in the settlement

discussions, the Parties agreed on the terms of a settlement on July 9, 2010.

(Sweeney Decl. ¶ 21). Those terms were memorialized on the record and in a formal Stipulation and Settlement Agreement ("Settlement Agreement"). (Sweeney Decl. ¶ 22).

### D. Preliminary Approval

On November 19, 2010, the Court preliminarily approved the settlement. Doc. 97. The Court provisionally certified the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes:

> all individuals who worked as full-time Travel Agents ("Travel Agents") for Defendant Liberty Travel, Inc.:
> (1) in Maryland between March 19, 2006, and August 31, 2008;
> (2) in Massachusetts between March 19, 2007, and August 31, 2008;
> (3) in New Jersey between September 4, 2007, and August 31, 2008; and
> (4) in New York between March 19, 2003, and August 31, 2008.

The Court also approved of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and the claim forms. (Sweeney Decl. ¶ 51).

### E. Results of Notice

Gilardi and Co., LLC ("Gilardi") was retained to handle the administration of the Class Members' claims. (Sweeney Decl. ¶ 52). Gilardi mailed a notice package to 1,283 class members on December 3, 2010. (*Id*.). On January 7, 2011, Gilardi created a website for Class Members to download and print a copy of the Notice of Proposed Settlement of Class Action document and the Claim Form, and to obtain information regarding this class action. (Sweeney Decl. ¶ 52). On January 12, 2011, Gilardi mailed a post card reminder to class members that had not yet

7

responded. (*Id.*). In addition, 129 notification mailings were returned to Gilardi because the notice package was sent to an undeliverable address. (*Id.*). Gilardi performed address searches and found 108 of the 129 returns. Gildardi then re-mailed the notice package to the Class Members. (*Id.*).

The response to the mailing was positive. All of the Named Plaintiffs returned their claim form. Ninety-five percent of the original opt-in FLSA class filed a claim form, while seven opt-in class members did not return their claim form.[2] Out of the approximately 1,283 class members, 532, or 41.5%, of the class timely returned a claim form. An additional four members returned their claim forms late. In addition six class members opted-out of the settlement. (Sweeney Decl. ¶ 54). There were no objections to the settlement or the attorneys' fees and costs. (Sweeney Decl. ¶ 55).

## III.   ARGUMENT

### A. The Settlement Class Meets the Legal Standard for Class Certification

The Court previously found that this case meets the requirements for class certification. Doc. 97, Order, ¶ 32.  The Court conditionally certified four state class actions under Rule 23(e). The four class actions ("Settlement Class") are defined as:

---

[2] Plaintiffs' Counsel attempted to contact and track down these seven FLSA Plaintiffs, but were unsuccessful.

all individuals who worked as full-time Travel Agents ("Travel Agents") for
Defendant Liberty Travel, Inc.:
(1) in Maryland between March 19, 2006, and August 31, 2008;
(2) in Massachusetts between March 19, 2007, and August 31, 2008;
(3) in New Jersey between September 4, 2007, and August 31, 2008; and
(4) in New York between March 19, 2003, and August 31, 2008.

In certifying the classes, the Court reasoned that the Plaintiffs meet all of the

requirements of Rule 23(a) and (b)(3). Doc. 97, Order, ¶ 32. That reasoning

remains the same today. And there is no justification to deny final certification

Thus, the court should grant final certification.

## B. The Settlement Class Meets the Rule 23(a) and (b)(3) Class Requirements

Plaintiffs must meet the requirements under Rule 23(a) and (b)(3) to establish a

class action. There are four requirements under Federal Rule of Civil Procedure

23(a) to certify a class action. They are:

1. the class is so numerous that joinder of all members is impracticable;
2. there are questions of law or fact common to the class;
3. the claims or defenses of the representative parties are typical of the claims
   or defenses of the class; and
4. the representative parties will fairly and adequately protect the interests of
   the class.

Fed.R.Civ.P. 23(a); *Weiss v. York. Hosp.,* 745 F.2d 786, 807 (3d Cir.1984). These

requirements are commonly referred to as numerosity, commonality, typicality and

adequacy of representation. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 391

F.3d 516, 527 (3d Cir.2004).

Plaintiffs must satisfy a two-part test under Rule 23(b)(3) for class certification. The first part requires the presence of common questions of law or fact. And the second part requires the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

The Court previously found that this case meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). Doc. 97, Order, ¶¶ 32. That rational remains the same today. There is no opposition to class certification. Based on the reasons that follow, the Court should find that all requirements are satisfied. And the settlement class should be finally certified.

## C. The Settlement Class Meets Rule 23(a) Requirements

### 1.   There Are More Than 40 Class Members

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *Lenahan v. Sears, Roebuck and Co.*, No. 02-0045, 2006 WL 2085282, *7 (D.N.J. July 24, 2006). There is no minimum number needed to show numerosity. However, numerosity is met if there is a showing that the number of plaintiffs is greater than 40. *Stewart v. Abraham*, 275 F.3d 220, 226 (3d

Cir. 2001). Indeed, Courts have also approved of classes of 40 or less. *See, Banda v. Corzine*, No. 07-4508 (WJM), 2007 WL 3243917, *16 (D.N.J. Nov. 1, 2007). Here, there are over 1,200 Class Members. (Sweeney Decl. ¶ 56). Thus, the Court should find the classes satisfy this requirement. *Lenahan v. Sears, Roebuck and Co.*, Civ. No. 02-0045, 2006 WL 2085282, *7 (D.N.J. July 24, 2006).

  2.  Common Questions of Fact or Law Are Present

  Next, Plaintiffs must demonstrate that there are questions of fact or law that are common to the Class to satisfy the commonality requirement. Fed.R.Civ.P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994) (internal citations omitted).

  This case involves numerous common issues and the Court found that Plaintiffs met the commonality requirement. Doc. 97, Order, ¶ 34.  Plaintiffs and all Class Members bring the identical claim that as a company wide policy and practice Liberty Travel failed to pay them earned overtime wages in violation of state wage and hour laws. *See Lenahan*, 2006 WL 2085282, *7.  Without a class certification and settlement, each individual state settlement Class Member would be forced to litigate each common issue of fact. Thus, Plaintiffs satisfy the commonality

11

requirement. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527-28 (3d Cir.2004).

   3.  Plaintiffs' Claims Are Typical of the Class Claims

Rule 23(a)(3) requires that "the claims of ... the representative parties [be] typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir.1998). Factual differences between the class representatives and other members of the class do not preclude a finding of typicality. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir.1998).

Here, the Court found that Plaintiffs met the typicality requirement. Doc. 97, Order, ¶ 35.  The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims.  The Named Plaintiffs share the same job titles and had the same job duties as the class members.  They also suffered the same injuries as did the class members – that Liberty Travel failed to properly pay them correctly for overtime hours worked. (Sweeney Decl. ¶ 57). No one disputes that Plaintiffs satisfy this requirement.  In such circumstances, typically is met. *Lenahan*, 2006 WL 2085282, *8.

   4.  Adequacy of Representation

"Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975).

Both prongs are easily satisfied here, as the Court previously stated. Doc. 97, Order, ¶ 36.  Plaintiffs' Counsel's law firm is dedicated to wage and hour litigation. Since 1998, Plaintiffs' Counsel has handled FLSA cases and companion state law claims across the country. Plaintiffs' Counsel is competent and experienced in wage and hour litigation. (Sweeney Decl. ¶ 58). Thus, Plaintiffs' Counsel satisfies this prong. *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F.Supp. 450, 521 (D.N.J. 1997).

The second prong calls for the Court to ensure that the representative plaintiff does not skew the terms of the settlement in their favor. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). And their interests must be aligned with the interests of the class. *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 800 (3d Cir. 1995).

There is no evidence or indication that Named Plaintiffs interests are antagonistic or at odds with Class Members.  Conflicts of interest between Plaintiffs and other Class members do not exist. The Named Plaintiffs, like the

13

other Class Members, were damaged because of Defendants' allegedly unlawful conduct and the Plaintiffs would have to prove the same wrongdoing as the absent Class members in order to establish Defendants' liability. In addition, the Named Plaintiffs have acted, and continue to act, as fiduciaries of the Class and their interests are directly aligned with those of other Class Members. Further, the Named Plaintiffs and the Class Members damages will be calculated the same. Thus, like the first prong, Plaintiffs interests are aligned with the Class. *Lenahan*, 2006 WL 2085282, *8.

Thus, the adequacy requirement of Rule 23(a) has been met. And Plaintiffs have continued to demonstrate compliance with each of the four prongs of Rule 23(a).

**D. Plaintiffs Satisfy The Two Rule (b)(3) Requirements**

1.  Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). "[T]he purpose of the inquiry is to determine whether class-wide issues outweigh individual issues." *Larson v. Sprint Nextel Corp.*, No. 07-5325 (JLL), 2010 WL 234934, *4 (D.N.J. Jan. 15, 2010).

14

Here, as the Court previously determined, all members of the class are unified by common factual allegations – that all class members were subject to Liberty Travel's wage and hour violation for failing to pay them for premium overtime hours.  Doc. 97, Order, ¶ 37. They are also unified by a common legal theory – that Liberty Travel's wage and hour policies violate state wage-and-hour laws. (Sweeney Decl. ¶ 60); s*ee Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment").

### 2.  A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "class resolution is the superior method for the fair and efficient adjudication of the controversy."  *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, *4 (D.N.J. Feb. 9, 2010).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including whether individual class members wish to bring, or have already brought, individual actions, "the extent and nature of any litigation concerning the controversy already begun by or against class members", the desirability of concentrating the litigation of the claims in the particular forum, and "the likely difficulties in managing a class action". Fed. R. Civ. P. 23(b)(3).

15

However, the issue of managing a class is not an issue with a settlement class and is thus not a relevant factor. *Warfarin*, 391 F.3d at 529.

Here, Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by class members arising from the same allegations. Regarding the forum, concentrating the litigation in this Court is desirable because Class Members signed a contract consenting to the jurisdiction of New Jersey to litigate their case. In addition, Liberty Travel's Corporate Headquarters is located here, so that some of the alleged violation occurred in this District. (Sweeney Decl. ¶ 61).

Employing the class device here will not only achieve economies of scale for putative class members, but it will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims. *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, *5 (D.N.J. Feb. 9, 2010).

Therefore, the Court should find that requirements under Rules 23(a) and 23(b)(3) are met. *Lenahan*, 2006 WL 2085282, *10.

### E. The Settlement Is Fair

Under Federal Rule of Civil Procedure 23(e), any class action settlement must be approved by the district court, and reasonable notice must be provided to all class members who may be bound by such settlement. *See* Fed.R.Civ.P. 23(e). Even where the requirements for certification under Rule 23 have been met, approval is warranted only if the Court also determines that the proposal is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2). When settlement negotiations precede class certification and settlement approval is sought simultaneously with class certification, the Court must be "more scrupulous than usual" when it examines the fairness of the settlement. *In re Gen. Motors Corp. Pick-up Truck*, 55 F.3d 768, 805; *see Warfarin*, 391 F .3d at 534. "This heightened standard is intended to ensure that class counsel has engaged in sustained advocacy throughout the course of the proceedings, particularly in settlement negotiations, and has protected the interests of all class members." *Warfarin*, 391 F.3d at 534. And the court acts as a fiduciary who serves as a guardian of the rights of absent class members. *See In re Gen. Motors Corp. Pick-up Truck*, 55 F.3d 768, 785 (3d Cir.1995). The court must "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Id.* (quotation omitted).

17

This determination is ultimately left to the sound discretion of the district court. *See Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir. 1975).

## F. A Presumption of Fairness Exists

The Court must apply an "initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Warfarin,* 391 F.3d at 535. Here, there is a presumption of fairness because Plaintiffs meet all of the presumption requirements.

Plaintiffs meet the first factor because the settlement discussions occurred at an arm's length. The Parties had face-to-face settlement negotiations over the course of nearly six months that included five meetings and numerous email and letter exchanges and telephone call in between each negotiation. And the Parties reached an agreement on the settlement amount and terms as Magistrate Judge Falk oversaw the negotiation process. (Sweeney Decl. ¶ 62); *Hall v. AT & T Mobility LLC,* No. 07-5325 (JLL), 2010 WL 4053547, *7 (D.N.J. Oct. 13, 2010) (there was a presumption of fairness in part because Parties negotiated the case before a retired Judge).

Plaintiffs meet the second factor because there was sufficient discovery. Plaintiffs served and responded to discovery demands. Plaintiffs also deposed

Liberty Travel and three Plaintiffs testified. Liberty Travel produced wage and hour records for the FLSA opt-ins and the Rule 23 classes. And Liberty Travel produced documents regarding its decision to pay workers under its diminishing overtime method. Finally, Plaintiffs had the benefit of previous litigation against Liberty Travel that resulted in at least 29 depositions, summary judgment, and trial decisions. The Parties also drafted a statement of undisputed facts. (Sweeney Decl. ¶ 19). Thus, Plaintiffs had a strong understanding of the facts supporting the overtime claims. *See, Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, *7 (D.N.J. Oct. 13, 2010).

Plaintiffs meet the third factor because the both Plaintiffs' and Defense counsel are experienced in wage and hour litigation. Plaintiffs' Counsel focuses on wage and hour litigation and has repeatedly been found to have expertise in FLSA opt in classes and Rule 23 state class actions. (Sweeney Decl. ¶ 63). Getman & Sweeney has acted as class counsel in many wage and hour class actions. *See, e.g., Clark v. Ecolab, Inc.*, 06 Civ 5672, 2009 WL 6615729, *7 (S.D.N.Y. Nov. 17, 2009); *Gulino v. Symbol Techs.Inc.*, No. 06 Civ. 2810, Doc. No. 46 (E.D.N.Y. Oct. 22, 2008); *Ayers v. SGS*, No. 03 Civ. 9078, Doc. No. 240 (S.D.N.Y. Sept. 9, 2009); *Martinez-Hernandez v. Butterball, Inc.*, 5:07-cv-00174-H, Doc. 114, p. 11 (E.D.N.C. Nov. 14, 2008); *Riddle v. SunTrust Bank*, 1:08-cv-1411-RWS, Doc. 71

(N.D.Ga Oct. 20, 2010); *In re Directech Southwest, Inc., Fair Labor Standards Act (FLSA) Litig*, No. 2:08-md 1984, Doc. 260 (E.D. Lou. Jan. 24, 2011).

Similarly Defense counsel has experience in wage and hour work. Their law firm focuses on employer related issues. Michael Weber, David Warner, and Lee Schreter have a long history of litigating wage and hour cases. (Sweeney Decl. ¶ 64).

Finally, Plaintiffs meet the fourth factor because no class member objected to the settlement. *See, In re Gen. Motors Corp. Pick-up Truck,* 55 F.3d 768, 812 (3d Cir.1995) ("silence constitutes tacit consent to the agreement."); *Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, *7 (D.N.J. Oct. 13, 2010). Thus, there is a presumption that the settlement is fair. *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 333-34 (D.N.J. 2002).

## G. The Settlement if Fair, Reasonable and Adequate Under the Nine *Girsh* Factors

Under Third Circuit precedent, the court must consider nine factors in determining the fairness of a proposed class action settlement. *Girsh,* 521 F.2d at 156-157. These include: (1) the "complexity, expense and likely duration of the litigation;" (2) "the reaction of the class to the settlement"; (3) "the stage of the proceedings and the amount of discovery completed"; (4) "the risks of establishing liability"; (5) "the risks of establishing damages"; (6) "the risks of maintaining the class action through the trial"; (7) "the ability of the defendants to withstand a

greater judgment"; (8) "the range of reasonableness of the settlement fund in light of the best possible recovery"; and (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation [.]" *Girsh,* 521 F.2d at 156-157. Because Plaintiffs meet all nine *Girsh* factors, the Court should find that the settlement is fair, reasonable, and adequate.

1. Litigation Through Trial Would be Complex, Costly, and Long (*Girsh* Factor 1)

Because most class actions are inherently complex, a class-wide settlement avoids costs, delays, and the numerous problems associated with them. *See, In re Merck & Co., Inc. Vytorin ERISA Litig.,* No. 08-CV-285 (DMC), 2010 WL 547613, *10 (D.N.J. Feb. 9, 2010); *Hairston v. McLean Trucking Co.,* 520 F.2d 226, 233 (4th Cir. 1975) (stating that "[c]lass actions for back pay under Title VII are inherently complex"). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 595 (3d Cir. 2010) ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial"); *Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL 900167, *6 (D.N.J. Mar. 31, 2009); *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*

21

This case is no exception. Based on Liberty Travel's prior litigation posture, this litigation could have been contentious. The Pennsylvania Liberty Travel litigation[3] spanned over 13 years and was extremely adversarial. The litigation included two separate state actions, resulted in 29 depositions, summary judgment motions, a trial, an appeal, and finally a settlement. There, plaintiffs' attorneys' fees and costs nearing one million dollars. In comparison, Plaintiffs avoided a long drawn out litigation, and efficiently resolved the cases. (Sweeney Decl. ¶ 65).

These four cases involve over 1,200 Class Members and claims under various federal and state statutes. Although the Parties spent considerable time and expense in litigating this matter, further litigation without settlement would necessarily result in additional expense and delay. Additional discovery would be required to establish liability and damages. Then the Parties would file summary judgment motions. And a complicated trial would be necessary, featuring extensive testimony by Liberty Travel, Plaintiffs, numerous class members, and expert testimony. Preparing and putting on evidence on the complex factual and legal issues would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the {arties' disputes. Any judgment would likely be appealed, thereby extending the duration of the

---

[3] *Signora v. Liberty Travel, Inc.*, No. 95-7834 (Court of Common Pleas of Delaware County, Pennsylvania) ("*Signora*"); *Welsh v. Liberty Travel et al.*, No. 03-12611 (Court of Common Pleas of Delaware County, Pennsylvania) ("*Welsh*").

litigation.  This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  (Sweeney Decl. ¶ 66). Therefore, the first *Girsh* factor weighs in favor of final approval.  *Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL 900167, *6 (D.N.J. Mar. 31, 2009).

    2.  The Reaction of the Class Has Been Positive  (*Girsh* Factor 2)

    At all stages of the litigation, the response from the class has been positive. The deadline to file objections has come and gone. No one has opposed the settlement. None of the Class Members have complained. *See, In re Gen. Motors Corp. Pick-up Truck,* 55 F.3d 768, 812 (3d Cir.1995) ("silence constitutes tacit consent to the agreement."). Less than one percent of the class opted out of the settlement. (Sweeney Decl. ¶ 54). Thus, the lack of objections shows that the class believes the settlement is fair. *See, Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL 900167, *7 (D.N.J. Mar. 31, 2009) ("The low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair.")

    Thus, the second *Girsh* factor weighs in favor of the settlement. *Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL 900167, *7 (D.N.J. Mar. 31, 2009).

    3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Girsh* Factor 3)

Although preparing this case through trial would require more discovery work for both sides, the Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The Parties' discovery here meets this standard. The Plaintiffs here had the benefit of two prior class action wage-and-hour cases against Liberty Travel. The *Signora* and *Welsh* cases against Liberty Travel spanned 13 years, finally ending in 2008. And between the two cases, 29 depositions were taken, summary judgment motions were litigated, a trial and verdict ensued, and appeals were filed. Plaintiffs' Counsel analyzed and digested the discovery from the *Welsh* and *Signora* cases, including the prior depositions. And in both those cases, Liberty Travel aggressively defended the claims against it. (Sweeney Decl. ¶ 65).

While Plaintiffs' Counsel used the *Welsh* and *Signora* litigations as a foundation, it further developed the facts in this case. Many Plaintiffs were interviewed to gather evidence of Liberty Travel's alleged wage and hour violations and in order to evaluate damages. Plaintiffs' Counsel deposed Liberty

24

Travel and defended depositions of three Named Plaintiffs in the *Bredbenner Case.*
In addition, Plaintiffs' Counsel obtained, reviewed, and analyzed a tremendous
amount of ESI; filed discovery motions; had numerous in detail conversations with
defense counsel about discovery issues including the production of payroll data,
ESI searches, and documents about its good faith defenses; Plaintiffs' responded to
Liberty Travel discovery demands; drafted, exchanged, and edited a joint
stipulation of facts.  (Sweeney Decl. ¶ 19). Discovery was set to close shortly, and
had the Parties not reached an amicable settlement, Plaintiffs were prepared to file
summary judgment motion. Discovery here was "an aggressive effort" to litigate
the case.

As the Court stated in *Serio*, "[a]rmed with [ ] discovery and due diligence,
Class Counsel has demonstrated an adequate appreciation of the merits of this case
in arriving at the proposed Settlement." *Serio v. Wachovia Sec., LLC,* No. 06-4681
(MF), 2009 WL 900167, *9 (D.N.J. Mar. 31, 2009). The same is true here.

4.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Girsh* Factors 4 and
5)

Although Plaintiffs' case is strong, it is subject to considerable risk as to
liability and damages.  In weighing the risks of establishing liability and damages,
the Court "must balance the risks of establishing liability and damages against the
certainty of obtaining immediate and substantial recovery through the proposed
Settlement." *Serio v. Wachovia Sec., LLC,* No. 06-4681 (MF), 2009 WL 900167,

25

*9 (D.N.J. Mar. 31, 2009). A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and four separate state wage-and-hour statutes, and in light of the defenses available to Liberty Travel, which would pose substantial risk as to both liability and damages. (Sweeney Decl. ¶ 67).

To prove liability, Plaintiffs would have to defeat Liberty Travel's arguments that the Plaintiffs were properly paid overtime.  Specifically, Liberty Travel would argue that it met the FLSA's overtime requirements because it paid them under the FLSA's fluctuating workweek under 29 C.F.R. § 778.114.  In addition, Liberty Travel would argue against liquidated damages and a third year statue of limitations, and that the attorney advice that it received insulated it from damages. (Sweeney Decl. ¶ 68).

While Plaintiffs believe that they could ultimately establish Liberty Travel's liability on these claims, to do so would require further factual development and dispositive motions.  And any issues that survived summary judgment would be litigated during a jury trial. A jury could find against Plaintiffs on any number of issues, including willfulness. (Sweeney Decl. ¶ 69); *see, Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1267 fn3 (11th Cir. 2008); *Serio v. Wachovia Sec., LLC,* No. 06-4681 (MF), 2009 WL 900167, *9 (D.N.J. Mar. 31, 2009).

Plaintiffs also risked significant procedural hurdles in the four class actions. Liberty Travel would argue strenuously against class certification of the four state class actions. Thus Plaintiffs risked losing class certification. (Sweeney Decl. ¶ 70).

While Plaintiffs believe that their claims are meritorious, Plaintiffs' Counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of a jury trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates this uncertainty. (Sweeney Decl. ¶ 71). These factors weigh heavily in favor of approval. *Serio v. Wachovia Sec., LLC,* No. 06-4681 (MF), 2009 WL 900167, *9 (D.N.J. Mar. 31, 2009).

5. Establishing a Class and Maintaining it Through Trial Would Be Difficult (*Girsh* Factor 6)

The risk of maintaining the class status through trial is also present. While the Court granted conditional certification of the *Bredbenner* FLSA class, the Court had not ruled on Plaintiffs' second motion for conditional certification or certified the state law classes yet. The standard for certifying the state law class actions is substantially higher than the conditional certification standard for a FLSA collective action. Class certification would involve intense, exhaustive briefing by both Parties. In arguing against class certification, Liberty Travel will likely argue that the number and variety of individualized questions would preclude class

27

certification, that some of the classes were not large enough to support class

certification, and that the classes could not be certified in federal court.  Liberty

Travel will likely also argue that a class action is not a superior method to resolve

Plaintiffs' claims and that a class trial would not be manageable.  (Sweeney Decl. ¶

72).  Moreover, Liberty Travel would likely move to de-certify the FLSA

Collective Action, thereby necessitating another round of extensive briefing.  *See,*

*Serio v. Wachovia Sec., LLC,* No. 06-4681 (MF), 2009 WL 900167, *10 (D.N.J.

Mar. 31, 2009).  And even if Liberty Travel's measures were defeated, Liberty

Travel would likely seek permission to file an interlocutory appeal under Fed. R.

Civ. P.  23(f).

Risk, expense, and delay permeate such processes.  Settlement eliminates this

risk, expense, and delay.  This factor favors final approval.  *See, Serio v. Wachovia*

*Sec., LLC,* No. 06-4681 (MF), 2009 WL 900167, *10 (D.N.J. Mar. 31, 2009).

6. Liberty Travel' Ability to Withstand a Greater Judgment is Not Clear (*Girsh* Factor 7)

Liberty Travel's ability to withstand a greater judgment is not clear at this time.

However, even if Liberty Travel could withstand a greater judgment, a

"defendant's ability to withstand a greater judgment, standing alone, does not

suggest that the settlement is unfair."  *Frank v. Eastman Kodak Co.,* 228 F.R.D.

174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian,* 80 F. Supp. 2d at 178 n.9); *see*

*also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538.   This factor does not

hinder this Court from granting final approval.

7. The Settlement Fund is Substantial, Even in Light of the Best Possible
   Recovery and the Attendant Risks of Litigation (*Girsh* Factors 8 & 9)

Plaintiffs' Counsel has determined that this case presents significant risks that

favor compromise.  Liberty Travel has agreed to settle this case for a substantial

amount, $3 million.  The $3 million settlement amount represents a good value

given the attendant risks of litigation, even though recovery could be greater if

Plaintiffs succeeded on all claims at trial and survived an appeal.  "It is well-settled

that a cash settlement amounting to only a fraction of the potential recovery will

not *per se* render the settlement inadequate or unfair."  *Lenahan v. Sears, Roebuck

and Co.*, Civ. No. 02-0045, 2006 WL 2085282, *16 (D.N.J. July 24, 2006)

(approving $15 million class settlement over objections that the "estimates of

nationwide exposure were estimated at $104 million") citing *Officers for Justice v.

Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th

Cir. 1982).

The determination of whether a settlement amount is reasonable "does not

involve the use of a 'mathematical equation yielding a particularized sum.'"

*Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).

"According to *Girsh*, courts approving settlements should determine a range of

reasonable settlements in light of the best possible recovery [ ] and a range in light

29

of all the attendant risks of litigation [ ]." *In re Gen. Motors Corp. Pick-up Truck,* 55 F.3d at 806.

Here, each Class Member will receive payment based on the overtime hours worked as shown in Liberty Travel's payroll records. (Sweeney Decl. ¶ 35). As explained in both the Settlement Agreement and in Plaintiffs' Motion for Preliminary Approval of Class Settlement, Provisional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, Approval of Plaintiffs' Proposed Notice of Settlement, and Other Relief, the amount that each category of class members will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. These factors weigh heavily in favor of approval. *Lenahan v. Sears, Roebuck and Co.,* Civ. No. 02-0045, 2006 WL 2085282, *16 (D.N.J. July 24, 2006).

The *Girsh* factors all weigh in favor of issuing approval of the settlement. None of the factors weigh against approval. Accordingly, the Court should grant final approval of the class settlement. *Serio v. Wachovia Securities, LLC,* No. 06-4681 (MF), 2009 WL 900167, *10 (D.N.J. March 31, 2009).

**H. Policy in favor of class settlements**

There is an "overriding public interest in settling class action litigation." *Warfarin,* 391 F.3d at 535; *see also Ehrheart,* 609 F.3d at 595 (noting the "especially strong" presumption in favor of voluntary settlements in " 'class actions ... where substantial judicial resources can be conserved by avoiding formal litigation' " (quoting *Gen. Motors Corp.,* 55 F.3d at 784)); *In re Sch. Asbestos Litig.,* 921 F.2d 1330, 1333 (3d Cir. 1990) (noting that the court encourages settlement of complex litigation "that otherwise could linger for years"); *In re Warfarin Sodium Antitrust Litigation,* 391 F.3d 516, 535 (3d Cir. 2004). Here substantial judicial resources will be conserved because this settlement resolves four state class actions, one case in New Jersey Superior Court, three cases in the United States District Court for the District of New Jersey, and it eliminates the risk of over a one thousand individual claims. Thus, public policy favors this settlement. *Warfarin,* 391 F.3d at 535.

## IV.   FLSA SETTLEMENT

Plaintiffs also request that this Court finally approve the settlement of their FLSA claims.  FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation, unlike the procedure under FRCP 23.  *See Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective

31

actions do not implicate the same due process concerns as Rule 23 actions.

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see also*

*Herring v. Hewitt Associates, Inc.*, No. 06 Civ. 267, 2007 WL 2121693, *3 (D.N.J.

July 24, 2007).  Accordingly, the high standard for approval of a class action

settlement under Rule 23 does not apply to an FLSA settlement.

    Courts approve FLSA settlements when they are reached as a result of

contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v.*

*U.S*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Adeva v. Intertek USA Inc.*, et al.,

09-CV-01096-SRC-MAS, Doc. 228 (D.N.J. Dec. 22, 2010)[4].  Typically, courts

regard the adversarial nature of a litigated FLSA case to be an adequate indicator

of the fairness of the settlement.  *Lynn's Food Stores*, 679 F.2d at 1353-54.  If the

proposed settlement reflects a reasonable compromise over contested issues, the

court should approve the settlement.  *Id.* at 1354.

    In this case, the settlement was the result of vigorously contested litigation and

arms-length negotiation.  (Sweeney Decl. ¶ 73). Recognizing the uncertain legal

and factual issues involved, the Parties engaged in numerous negotiation sessions

that culminated with settlement discussions with Magistrate Judge Falk.

Throughout the litigation, Plaintiffs and Liberty Travel were presented by counsel.

Accordingly, the Settlement Agreement resolves a clear and actual dispute under

---

[4] This case is attached as Exhibit 1

circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore appropriate for final approval. *Adeva v. Intertek USA Inc.*, et al., 09-CV-01096-SRC-MAS, Doc. 228 (D.N.J. Dec. 22, 2010)

## V. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court certify the settlement classes under Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the settlement; grant final approval of the parties' Settlement Agreement; and grant approval of the FLSA settlement.

Dated:    March 4, 2011
          New Paltz, New York

Respectfully submitted,

By:

Michael J.D. Sweeney (*PHV*)
Matthew Dunn
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

Patrick J. Monaghan, Jr.
Beattie Padovano, LLC
50 Chestnut Ridge Road
Montvale, New Jersey 07645
Telephone: (201) 573-1810

Attorneys for Plaintiffs

33